UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FILED**
MAY 0 9 2006
CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

In re:

DUDLEY EUGENE CORLEY and
CATHERINE ANN CORLEY,

    Debtors.
_____/

Case No. 6:05-bk-02991-ABB
Chapter 7

TIP TOP TREE EXPERTS, LLC,

    Plaintiff,

vs.

DUDLEY EUGENE CORLEY and
CATHERINE ANN CORLEY,

    Defendants.
_____/

Adv. Pro. No. 6:05-ap-00198-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Complaint for Determination of Dischargeability and Seeking a Denial of Discharge ("Complaint")[1] filed by Tip Top Tree Experts, LLC, the Plaintiff herein (the "Plaintiff"), against Dudley Eugene Corley ("Mr. Corley") and Catherine Ann Corley ("Mrs. Corley"), the Defendants and Debtors herein (collectively, the "Debtors"). The Plaintiff seeks to have a debt in the amount of $4,450.00 deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)[2] and to have the Debtors' discharge denied pursuant to 11 U.S.C. §§ 727(a)(4) and (a)(2)(A). An evidentiary hearing was held on April 6, 2006. The parties and their counsel appeared at the hearing. The parties were granted leave to file closing briefs. The Plaintiff filed a

---

[1] Doc. No. 1.
[2] The Plaintiff refers to § 523(a)(1)(A) in its Complaint, but appears to mean § 523(a)(2)(A).

Motion to Amend to Conform to Evidence ("Motion to Amend") seeking to amend the Complaint to include 11 U.S.C. §§ 523(a)(4) and (a)(6) nondischargeability counts.[3] The Defendants filed an objection to the Motion to Amend.[4] The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

The Debtors own their home located at 39836 Grays Airport Road, Lady Lake, Florida 32159 (the "Property"). A large tree fell on the roof of the Property on September 26, 2004 as a result of Hurricane Jean and damaged the Property. The Debtors care for three young grandchildren and the fallen tree created an emergency situation endangering them and the grandchildren. The Debtors have limited financial resources; Mr. Corley is disabled and Mrs. Corley is an examiner with the State of Florida Department of Motor Vehicles. They had only $200.00 on hand when the tree fell.

The Debtors maintained insurance on the Property through Allstate Floridian Indemnity Company ("Allstate") and informed the Plaintiff they would pay for the Plaintiff's services using insurance proceeds. The Debtors hired the Plaintiff on an emergency basis to remove the tree for $4,550.00. Mr. Corley and the Plaintiff's Managing Member executed a Proposal on September 27, 2004 setting forth the price of $4,550.00 for "removal of 2 large oaks uprooted and fallen on house and screened Florida room."[5] The description "2 large oaks" refers to one tree; the tree is forked so that it

---

[3] Doc. No. 19.
[4] Doc. No. 20.
[5] Plaintiff's Exh. No. 8.

resembles two trees sharing one root system.[6] The Proposal sets forth a price of $3,500 for the removal of a second tree that was uprooted by the hurricane and leaning against the corner of the Property.

The Plaintiff removed the tree from the roof by manual means (workmen using a block and tackle system) on September 27, 2004. The Plaintiff originally intended to remove the tree using a crane and loader, but the crane was not available. The Plaintiff's crew returned one week later and moved logs cut from the tree to the Debtors' front yard. The Plaintiff did not remove the tree's debris, its stump, or any other trees. FEMA eventually disposed of the logs. The Debtors made a claim on their policy and the Allstate insurance adjuster calculated a net claim of $7,864.70, which includes the amount of $4,550.00 for "Special Subcontractor Agreed Price."[7]

A dispute arose between the Debtors and the Plaintiff regarding the Plaintiff's services. The Debtors contend the $4,550.00 price included removal of the tree, its debris, and stump from the premises. The Proposal is ambiguous as to whether "removal" entails removing the tree from the roof or removing the tree, its debris, and its stump from the premises. Allstate issued a check in the amount of $7,640.45 to the Debtors on or about October 25, 2004.[8] The Debtors set aside in their safe $2,000.00, consisting of a portion of the insurance proceeds and personal savings, which they intended to pay to the Plaintiff after resolving the price dispute. The Debtors believe $2,000.00 is the fair value of the services performed by the Plaintiff. Mrs. Corley intended to pay the Plaintiff in installments if the Plaintiff insisted on payment of the full amount of $4,550.00.

---

[6] Plaintiff's Exh. No. 9; Defendants' Exh. No. 2.
[7] Plaintiff's Exh. No. 2.
[8] Plaintiff's Exh. No. 3.

The Debtors spent the remaining insurance proceeds on living expenses, materials for repairing the Property, and other debts. They used the money held in the safe to pay bail for Mr. Corley on or about February 14, 2005. They did not use any of the insurance proceeds for gambling or gambling related debts, nor did they use the funds for a trip to Las Vegas. All of the insurance proceeds were spent by February 28, 2005.

The Debtors filed a joint Chapter 7 case on March 25, 2005 ("Petition Date") to prevent Ford Motor Credit from issuing a garnishment. They did not list the Plaintiff as a creditor in their original Schedules nor did they disclose their hurricane loss or receipt of the insurance proceeds in their Statement of Financial Affairs. The Debtors testified at their meeting of creditors they had listed all of their creditors. Mrs. Corley explained the Plaintiff was not initially listed as a creditor because the Debtors intended to pay the Plaintiff for its services. She also explained they did not consider the Plaintiff a creditor because the debt did not fall within her understanding of the definition of "creditor" and it did not appear on her credit report. The Debtors filed an Amended Schedule F listing the Plaintiff as holding an unsecured undisputed claim of $3,000.00.[9] The Debtors, prior to the Petition Date, informed their counsel of the hurricane loss and their receipt of the insurance proceeds. Counsel for the Debtors admitted the hurricane loss and insurance proceeds information was not included in the Statement of Financial Affairs due to his error.

The parties attempted to resolve the tree removal debt post-petition. The Plaintiff's Managing Member and Mrs. Corley met at her office on or about April 6, 2005 and she paid him $100.00. They were unable to resolve their dispute.

---

[9] Main case Doc. No. 8.

The Plaintiff filed its Complaint against the Debtors seeking to have the debt of $4,450.00 (which reflects a credit of the $100.00 payment) deemed nondischargeable on the ground the Debtors obtained the Plaintiff's services through false pretenses, a false representation, or actual fraud. The Plaintiff seeks denial of the Debtors' discharge on the grounds the Debtors, with the intent to hinder, delay, or defraud a creditor or an officer of the estate, concealed property and knowingly and fraudulently made material misrepresentations in their Schedules and Statement of Financial Affairs.

The Debtors intended to pay the Plaintiff for its services at the time they engaged the Plaintiff. Their intention to pay continued at least through the Petition Date, if not longer. The parties could not agree as to whether the Plaintiff fully performed and what amount was due. The Debtors had no fiduciary obligation to turn over the insurance proceeds to the Plaintiff. The insurance proceeds were not the property of the Plaintiff. The Debtors did not obtain the Plaintiff's services through false pretenses, a false representation, or actual fraud. They did not make a false representation in order to deceive the Plaintiff.

The Debtors did not knowingly and fraudulently make a false oath or account in this case. They knowingly omitted the Plaintiff from their original Schedule F, but did so out of ignorance without fraudulent intent. The Debtors did not conceal property. They informed counsel of the hurricane loss and receipt of the insurance check. They specified "hurricane damage" as a loss suffered in the last year in the written Bankruptcy Information Sheet they completed for counsel.[10] The omission of the hurricane loss and insurance proceeds information from the Statement of Financial Affairs was the result of

---

[10] Debtors' Exh. No. 1 at p. 9 (Doc. No. 16).

counsel's error. The Debtors relied upon counsel's expertise in reviewing the content of their Statement of Financial Affairs and signing that document.

The Plaintiff did not raise issues related to willful and malicious injury and larceny or embezzlement in its pleadings. It seeks to amend its pleadings to include willful and malicious and larceny or embezzlement nondischargeability counts. Such issues were not tried by express or implied consent of the parties. The Debtors did not willfully and maliciously cause injury to the Plaintiff. They did not commit larceny or embezzlement.

## **CONCLUSIONS OF LAW**

The Plaintiff seeks denial of the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(4) and challenges the dischargeability of the debt in the amount of $4,450.00 pursuant to 11 U.S.C. § 523(a)(2)(A). The party objecting to a debtor's discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993).

Section 523(a)(2)(A) provides a chapter 7 discharge does not discharge an individual debtor from a debt to the extent such debt is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A) (2005). To establish fraud pursuant to §523(a)(2)(A), courts have generally required a plaintiff to establish the traditional

elements of common law fraud. A plaintiff must prove the following elements: (i) the debtor made a false representation to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).

The cornerstone issue for the nondischargeability count is whether the Debtors committed fraud at the time they entered into an agreement for tree removal services with the Plaintiff. The Plaintiff urges the Debtors obtained its services by actual fraud because the Debtors never intended to use the insurance funds to pay the Plaintiff. The Debtors intended from the start to pay the Plaintiff using the insurance proceeds and then changed circumstances required them to use the funds for more pressing matters. The Debtors made a promise to use the insurance funds for one purpose and then used them for another. The Debtors had no fiduciary obligation to turn over the insurance proceeds to the Plaintiff. The Debtors intended to pay the Plaintiff for its services after the insurance proceeds had been spent, as evidenced by Mrs. Corley's payment of $100.00 and attempt to work out a payment plan with the Plaintiff post-petition. The Debtors did not make any false representations in order to deceive the Plaintiff. The Plaintiff has not established the Debtors obtained the Plaintiff's services through false pretenses, a false representation, or actual fraud pursuant to § 523(a)(2)(A).

Section 727(a)(2)(A) of the Bankruptcy Code provides a debtor's discharge shall be denied where the debtor has, within one year of the petition date and with the intent to hinder, delay, or defraud a creditor, transferred, removed, destroyed, mutilated, or concealed property of the debtor. 11 U.S.C. § 727(a)(2)(A). Section 727(a)(4) of the

Bankruptcy Code provides a debtor's discharge shall be denied where the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4). The Debtors did not conceal their receipt of the insurance proceeds. They informed their counsel of the hurricane loss and receipt of the insurance proceeds. Counsel mistakenly omitted that information from their Statement of Financial Affairs. The Debtors did not knowingly and fraudulently make a false oath or account in connection with their bankruptcy case. The Plaintiff has failed to establish the necessary elements of 11 U.S.C. §§ 727(a)(2)(A) and (a)(4). Denial of the Debtors' discharge is not appropriate. The Plaintiff has failed to establish the elements of 11 U.S.C. § 523(a)(2)(A). The debt is not entitled to be excepted from discharge and judgment will be entered in favor of the Debtors.

The Plaintiff did not raise issues related to willful and malicious injury and larceny or embezzlement in its pleadings. It seeks to amend its pleadings to include 11 U.S.C. §§ 523(a)(4) and 523(a)(6) nondischargeability counts pursuant to Federal Rule of Civil Procedure 15(b), as made applicable to bankruptcy proceedings by Federal Rule of Civil Procedure 7015. Rule 15(b) allows for amendment of pleadings post-trial where "issues not raised by the pleadings are tried by express or implied consent of the parties. . . ." Fed. R. Civ. P. 15(b) (2005). Issues relating to willful and malicious injury and larceny or embezzlement were not tried by express or implied consent of the parties.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Plaintiff's Motion to Amend to Conform to Evidence is hereby **DENIED**.

A separate judgment in favor of the Debtors and against the Plaintiff consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 9th day of May, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge